UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| YOLANDA G., | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** |
| Plaintiff, | |
| v. | Case No. 1:20-cv-00060-RJS-DAO |
| ANDREW SAUL, Commissioner of the Social Security Administration, | Judge Robert J. Shelby |
| Defendant. | Magistrate Judge Daphne A. Oberg |

Plaintiff Yolanda G.[1] brought this action against Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the denial of her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385.  (*See* Compl., Doc. No. 3.)  The Administrative Law Judge ("ALJ") determined Ms. G. did not qualify as disabled.  (Certified Tr. of Admin. R. ("Tr.") 19–32, Doc. Nos. 21–22.)  After careful review of the record and the parties' briefs,[2] the undersigned[3] RECOMMENDS the district judge AFFIRM the Commissioner's decision.

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court will refer to Plaintiff by her first name and last initial only.

[2] The appeal will be determined on the basis of the written memoranda, pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, as oral argument is unnecessary.

[3] On September 9, 2020, the district judge referred this case to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 19.)

<u>STANDARD OF REVIEW</u>

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner of the Social Security Administration.  This court reviews the ALJ's decision to determine whether the record contains substantial evidence in support of the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Although the court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

The ALJ's factual findings will stand if supported by substantial evidence.  42 U.S.C. § 405(g).  The substantial evidence standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence or if there is a mere scintilla of evidence supporting it." *Id.* (citation omitted).  The court will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (citation omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citation omitted).  Moreover, the court may not substitute its judgment for that of the ALJ. *Langley*, 373 F.3d at 1118.

In addition, the court reviews whether the ALJ applied the correct legal standards. "The failure to apply the correct legal standard or to provide [the] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (internal quotation marks omitted).

<u>APPLICABLE LAW</u>

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ employs a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which precludes substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform his or her past work; and

5) The claimant possesses a residual functional capacity to perform other work in the

national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42

(1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the

burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224

(10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant

retains the ability to perform other work existing in the national economy.  *Id.*

## PROCEDURAL HISTORY

Ms. G. filed applications for disability insurance benefits (DIB) and supplemental

security income (SSI) on March 9, 2017, alleging disability beginning January 17, 2017.  (Tr. 19,

68–70, 84, 215–25.)  Ms. G. claimed disability due to heart surgery in February 2017, chronic

heart failure, diabetes, obesity, depression, and other conditions.  (Tr. 22, 25, 264, 450.)

After a hearing, the ALJ issued a decision on May 22, 2019, finding Ms. G. not disabled.

(Tr. 19–32.)  At step two of the sequential evaluation, the ALJ determined Ms. G. had the severe

impairments of major depressive disorder, unspecified neuro-cognitive disorder, chronic heart

failure with preserved ejection fraction, diabetes mellitus, degenerative joint disease, obesity,

nephrotic syndrome, depression, and status post mitral valve replacements.  (Tr. 22.)  The ALJ

also found Ms. G. had non-severe impairments of mild cervical spondylosis and pulmonary

hypertension.  (*Id.*)  At step three, the ALJ found Ms. G.'s impairments did not meet or equal an

impairment listing.  (Tr. 22–24.)  At step four, the ALJ determined Ms. G. had the residual

functional capacity (RFC) to perform light work with the following limitations:

> She can frequently climb ramps and stairs; she can never climb ladders and
> scaffolds; she can frequently reach in all directions with her right dominant upper
> extremity; she can never be exposed to unprotected heights or dangerous moving
> machinery.  She has the ability to understand, remember, and carry out simple,

routine, and repetitive tasks; she can perform goal-oriented but not assembly line-paced work; she can occasionally interact with co-workers, supervisors, and the general public; and she can adapt to routine changes in the work place.

(Tr. 24.)  The ALJ found Ms. G. was capable of performing past relevant work as a mail clerk, as it is generally performed.  (Tr. 30-31.)  Alternatively, at step five, the ALJ found Ms. G. could perform other jobs existing in the national economy, based on the testimony of a vocational expert.  (Tr. 31–32.)  Therefore, the ALJ concluded Ms. G. was not disabled.  (Tr. 32.)

The Appeals Council denied Ms. G.'s request for review (Tr. 4–9), making the ALJ's decision final for purposes of judicial review.

<u>DISCUSSION</u>

Ms. G. contends the ALJ erred in (1) failing to detail the nature of her upper extremity impairments at step two; (2) failing to give proper weight to the medical opinions of her physical therapist, Mr. Sedgwick, and the psychological consultative examiner, Dr. Brass; (3) failing to properly consider her obesity; and (4) failing to include all her limitations in presenting a hypothetical to the vocational expert.  (Opening Br. 15, Doc. No. 25.)

**A. Upper Extremity Impairments**

Although the ALJ found Ms. G. had the severe impairment of "degenerative joint disease" at step two, (Tr. 22), Ms. G. argues the ALJ erred in failing to specify which joints were affected.  (Opening Br. 21–23, Doc. No. 25.)  She notes she was diagnosed with chronic right shoulder pain which was suspected to be rotator cuff syndrome, and was also diagnosed with trigger thumb.  (*Id.* at 22 (citing Tr. 514, 641); *see also* Tr. 642–43.)  Ms. G. also cites the functional capacity analysis performed by her physical therapist, which noted significant functional abnormalities of the upper extremity and found she was limited to occasional reaching in all directions and occasional reaching with her upper extremity.  (*Id.* (citing Tr. 668).)

In support of her argument, Ms. G. relies on *Haines v. Apfel*, 986 F. Supp. 1212 (S.D. Iowa 1997), an out-of-circuit case in which the ALJ made a general finding that the plaintiff had severe impairments but failed to specify which impairments were severe. *Id.* at 1213. The *Haines* court expressed concern over its resulting inability to conduct a meaningful review. *Id.* at 1214. However, *Haines* has little applicability because, here, the ALJ did identify the alleged impairments he found to be severe. (Tr. 22.) The ALJ's decision allows for meaningful review. And Ms. G. has not cited any authority requiring the ALJ to describe the nature or extent of these impairments with greater specificity at step two.

In addition, Ms. G. has failed to show the degree of specificity reflects any error by the ALJ. The ALJ's decision indicates he properly considered Ms. G.'s shoulder impairment in assessing her RFC. In discussing the medical evidence, the ALJ noted Ms. G. was given exercises for her right shoulder pain but was found to have "normal musculoskeletal extremity movement and strength" in multiple clinic notes, including her last treatment record before the hearing. (Tr. 25, 27–29 (citing Tr. 82, 514, 519, 642, 769, 772).) The ALJ found Ms. G. could only "frequently reach in all directions with her right dominant upper extremity," and stated this limitation was "necessitated by [her] musculoskeletal impairments." (Tr. 29.) This finding is supported by substantial evidence, including the medical records cited by the ALJ. Because the ALJ properly accounted for Ms. G.'s shoulder impairment in determining her RFC, any failure to describe this impairment with greater specificity at step two has no effect.

While it is true the ALJ did not specifically discuss Ms. G.'s trigger thumb condition in his RFC analysis, he did cite to the sole medical record where this condition was mentioned. (Tr. 27 (citing Tr. 642–43).) This record indicates Ms. G. was offered several treatment options for this condition which she did not pursue at that time. (Tr. 643.) Ms. G. does not identify

evidence in the record showing this condition persisted for twelve months, as required for a finding of severity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Nor does she offer any argument regarding how this condition would affect her RFC.  Thus, Ms. G. has not shown the ALJ erred in failing to identify her thumb condition as a severe impairment or declining to include limitations related to it in her RFC.

## B. Medical Opinions

Ms. G. contends the ALJ erred in his analysis of the medical opinions of a physical therapist, Mr. Sedgwick, and the psychological consultative examiner, Dr. Brass.  (Opening Br. 16–21, Doc. No. 25.)

<u>Mr. Sedgwick</u>

Ms. G. argues the ALJ failed to properly consider functional capacity testing performed by Mr. Sedgwick, a physical therapist.  (Opening Br. 16–19, Doc. No. 25.)

Mr. Sedgwick performed a functional capacity evaluation of Ms. G. in March 2019 upon a referral from her doctor.  (Tr. 652–69.)  He opined Ms. G. could perform sedentary work and could reach overhead and forward occasionally, bend and squat infrequently, sit frequently, dynamically stand occasionally, and walk infrequently.  (Tr. 668–69.)  The ALJ discussed these opinions in his decision but assigned them "little weight."  (Tr. 30.)  The ALJ noted Mr. Sedgwick was not an "acceptable medical source."  (*Id.*)  The ALJ concluded the medical record did not support Mr. Sedgwick's finding that Ms. G. could walk infrequently, noting her treatment records indicated she "walked with normal gait on multiple occasions."  (*Id.* (citing Tr. 676, 681).)  The ALJ also found the medical record demonstrated Ms. G. had "adequate strength in her arms and legs sufficient to perform light work."  (*Id.*)  The ALJ cited the opinion of a state agency medical consultant who found, based on a review of the medical record, that Ms. G. had

"adequate strength in [her] arms and legs and the ability to walk normally" and could perform

light work.  (*Id.* (citing Tr. 82).)  He also cited medical records indicating normal extremity

movement and strength.  (*Id.* (citing Tr. 642, 670–775).)

Ms. G. first argues the ALJ erred in assigning little weight to Mr. Sedgwick's opinion due

to the fact that he was not an acceptable medical source.  (Opening Br. 16, Doc. No. 25.)  She

cites social security regulations and rulings providing a medical source who does not qualify as

an "acceptable medical source" may nonetheless opine on issues such as functional limitations.

(*Id.* at 16–17.)  As Ms. G. notes, in some circumstances, these opinions may even outweigh

opinions from acceptable medical sources.  *See* 20 C.F.R. § 404.1527(f)(1)[4] ("Depending on the

particular facts in a case, and after applying the factors for weighing opinion evidence, an

opinion from a medical source who is not an acceptable medical source . . . may outweigh the

medical opinion of an acceptable medical source."); Social Security Ruling (SSR) 06-3p[5],

https://www.ssa.gov/OP_Home/rulings/di/01/SSR2019-02-di-01.html; *Frantz v. Astrue*, 509

F.3d 1299, 1302 (10th Cir. 2007).

Here, the ALJ did not assign "little weight" to Mr. Sedgwick's opinion solely because he

was not an acceptable medical source.  Instead, the ALJ properly considered his opinion based

on the factors for weighing opinion evidence.  Specifically, the ALJ concluded Mr. Sedgwick's

opinion was contrary to the medical record, including numerous records indicating Ms. G. had

---

[4] 20 C.F.R. sections 404.1527 (Title II claims) and 416.927 (Title XVI claims) govern evaluation of opinion evidence for claims filed before March 27, 2017.  *Id.*  Because Ms. G.'s claims were filed on March 9, 2017, these sections are applicable.

[5] SSR 06-3p was rescinded only as to claims filed on or after March 27, 2017.  *See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, 2017 WL 3928298, at *1 (stating rescission "will be effective for claims filed on or after March 27, 2017").  Because Ms. G.'s claim was filed before this date, SSR 06-3p is applicable.

normal gait and adequate strength in her extremities.  (Tr. 30.)  The ALJ also cited the contrary opinion of another medical source, the state agency medical consultant.  (*Id.*)  Consistency with the medical record as a whole is one of the factors to be considered in determining the weight to give a medical opinion.  20 CFR § 404.1527(c)(4) ("The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion."); *id.* § 416.927(c)(4) (same).  Therefore, the ALJ properly used this as a basis to discount Mr. Sedgwick's opinion.

Ms. G. also contends Mr. Sedgwick's opinion regarding her functional capacity should have been given significant weight because it was based on objective testing.  (Opening Br. 17, Doc. No. 25.)  She argues his opinion should outweigh other doctors' brief observations that she had normal gait and normal extremity movement and strength.  (*Id.* at 17–18.)  While supportability is a factor to be considered in determining the weight to give a medical opinion, *see* 20 CFR §§ 404.1527(c)(3), 416.927(c)(3), the ALJ did not err in discounting Mr. Sedgwick's opinion based on other factors, namely, inconsistency with the medical record as a whole.  Ms. G.'s argument that these factors should have been weighed differently merely invites reweighing of the evidence.  The ALJ's determination was supported by numerous clinical observations in the record and by the opinion of the state agency medical consultant.  These records represent more than a "mere scintilla" of evidence and are not "overwhelmed" by the functional capacity testing performed by Mr. Sedgwick.  *See Lax*, 489 F.3d at 1084.  Thus, the ALJ properly considered Mr. Sedgwick's opinion under the applicable factors and discounted it based on substantial contrary evidence in the record.

For these reasons, the ALJ did not err in his analysis of Mr. Sedgwick's functional capacity testing and opinion.

Dr. Brass

Ms. G. next argues the ALJ erred in giving only "some very limited" weight to the

opinion of the psychological consultative examiner, Dr. Brass.  (Opening Br. 19–21, Doc. No.

25.)

Dr. Brass performed a psychological evaluation of Ms. G. in November 2017.  (Tr. 645–

649.)  Ms. G. reported depression symptoms and difficulty with concentration and

comprehension after her heart surgery.  (Tr. 648.)  Dr. Brass noted Ms. G. "appeared to have

great difficulty understanding questions."  (*Id.*)  Ms. G. scored a seventeen on the Montreal

Cognitive Assessment, which Dr. Brass indicated was "consistent with possible cognitive

dysfunction."  (*Id.* at 647–48.)  She stated the "[s]pecific cause of these problems is not fully

clear, but they do appear to be impairing functioning," and she gave Ms. G. a provisional

diagnosis of "unspecified neurocognitive disorder."  (*Id.* at 648.)  Dr. Brass opined Ms. G. would

likely need support to understand, carry out, and remember simple instructions, and could benefit

from written, repeated, or demonstrated instructions.  (*Id.*)  She also found Ms. G. would likely

have difficulty maintaining concentration and attention over the course of a typical workday.

(*Id.*)  She stated that "[w]ithout additional intervention it is likely [Ms. G.] would have difficulty

gaining and maintaining employment."  (*Id.* at 649.)

The ALJ described Dr. Brass's examination and opinions and assigned her opinions

"some very limited weight."  (Tr. 26–27, 30.)  The ALJ explained:

> The finding of disability is reserved to the commissioner, so that portion of her
> opinion is not relevant or helpful.  Moreover, Dr. Brass based her opinion on only
> a one-time examination of the claimant and appeared to be excessively influenced
> by subjective complaints of the claimant.  Moreover, her opinion that the claimant
> would have particular difficulty understanding, carrying out, and remembering
> simple instructions is not supported by her own equivocal diagnosis of a
> provisional unspecified neurocognitive disorder.  The objective medical record

and the lack of mental health therapy or mental health hospitalization supports
fewer mental limitations than suggested by Dr. Brass.

(Tr. 30.)

Ms. G. argues the ALJ's analysis is contrary to 20 C.F.R. § 404.1520C, which states

supportability and consistency are the "most important factors" to be considered in evaluating

the persuasiveness of medical opinions.  20 C.F.R. § 404.1520C(a).  However, this regulation is

applicable only to claims filed on or after March 27, 2017.  *Id.* § 404.1520C.  Ms. G.'s claims

were filed on March 9, 2017.  (Tr. 19, 68–70, 84 (noting a filing date of March 9, 2017); Tr.

215–25 (noting the application was completed on April 6, 2017).)  Thus, evaluation of opinion

evidence for her claims is governed by 20 C.F.R. § 404.1527 (Title II claim) and § 416.927 (Title

XVI claim).  These regulations do not state supportability and consistency are the "most

important factors," although they are included among the factors to be considered.  Therefore,

Ms. G.'s arguments are considered under the applicable standards in 20 C.F.R. § 404.1527 and

§ 416.927.

Ms. G. contends the ALJ erred in discounting Dr. Brass's opinion because (1) it was the

only meaningful and probative evidence related to mental impairment, (2) it was well-supported

by Dr. Brass's testing, observations, and interview with Ms. G, and (3) it was consistent with

statements from Ms. G.'s treating physicians regarding her depressive disorder and possible

psychotic disorder.  (Opening Br. 20, Doc. No. 25.)  She also argues the ALJ's statement

regarding a lack of mental health therapy or hospitalization is inappropriate because she did seek

assistance for mental health concerns from her treating physician and was provided medication.

(Opening Br. 20–21, Doc. No. 25.)

Although the evidence cited by Ms. G. could support a different conclusion, the ALJ's

evaluation of Dr. Brass's opinion reflects a proper consideration of the relevant factors and is

supported by substantial evidence.  The ALJ acknowledged and discussed Dr. Brass's testing and observations but gave her opinion less weight in part because it was based on a one-time examination, which is a proper factor to consider in evaluating the weight of an opinion.  *See* 20 C.F.R. § 404.1527(a)(2)(i); § 416.927(a)(2)(i).  The ALJ's statement that the opinion was "excessively influenced by [Ms. G.] subjective complaints" is also supported by Dr. Brass's report, which relies heavily on Ms. G.'s subjective reports of symptoms.  (Tr. 30, 645–49.)  These were proper bases to assign limited weight to Dr. Brass's opinion, and the court will not reweigh these factors merely because some evidence could support a contrary conclusion.

The ALJ also did not err in finding the lack of mental health therapy or mental health hospitalization in the record supported fewer mental limitations than suggested by Dr. Brass.  Ms. G. points to records from two visits with her treating physician which note symptoms of depression and indicate she was prescribed medication.  (Opening Br. 9–10, Doc. No. 25 (citing Tr. 641, 771–72.)  However, these records do not address the functional limitations related to concentration, attention, and comprehension noted by Dr. Brass, nor do they contradict the ALJ's statement that Ms. G. was not treated with therapy or hospitalization for her mental conditions.  The ALJ reasonably cited the lack of treatment related to the functional limitations identified by Dr. Brass as a reason to discount her opinion.

Finally, Ms. G. argues the ALJ's statement that Dr. Brass's findings were "not supported by her own equivocal diagnosis of a provisional unspecified neurocognitive disorder" is illogical.  (Opening Br. 21, Doc. No. 25.)  Ms. G. asserts Dr. Brass's diagnosis was supported by testing and adequately explained by Dr. Brass, and its provisional nature was appropriate where more information might be needed to make a specific diagnosis.  (*Id.*)  However, it was not unreasonable for the ALJ to cite the equivocal nature of the diagnosis as a reason to assign

limited weight to Dr. Brass's opinion regarding cognitive limitations, particularly where other factors also supported his determination.

For these reasons, the ALJ did not err in his analysis of Dr. Brass's opinion.

## C. Obesity

Ms. G. next contends the ALJ failed to properly consider her obesity beyond step two of the sequential evaluation, citing SSR 02-01p. (Opening Br. 23–24, Doc. No. 25.) SSR 02-01p recognizes obesity can cause functional limitations, and it provides "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-01p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2002-01-di-01.html.

The ALJ found Ms. G.'s obesity was a severe impairment at step two, (Tr. 22), but he also discussed her obesity in the portion of his decision addressing her RFC, making the following findings:

> Although the claimant is obese, there is no evidence that the claimant's obesity results in an inability to ambulate effectively . . . . There also is no evidence that obesity affects the cardiovascular and respiratory systems because of the increased workload the addition[al] body mass places on these systems. The medical record does not demonstrate that obesity makes it harder for the claimant's lungs or chest to expand.

(Tr. 28–29.) These findings appear in the ALJ's discussion of the medical evidence relevant to his RFC determination. (*See* Tr. 24–29.) Thus, contrary to Ms. G.'s argument, the ALJ discussed her obesity beyond step two of the sequential evaluation and considered its effects on her functional capacity.

## D. Vocational Expert Hypothetical

Finally, Ms. G. contends the court erred in failing to include all her limitations in presenting a hypothetical to the vocational expert. (Opening Br. 24–25, Doc. No. 25.) She argues the ALJ should have included the functional limitations found by Dr. Brass and Mr.

Sedgwick, as well as limitations regarding reaching, handling, fingering, sustaining work activity, and persisting over time.  (*Id.*)  However, as set forth above, the ALJ reasonably discounted Dr. Brass's and Mr. Sedgwick's opinions regarding her functional limitations, and his decision not to include those limitations in her RFC was supported by substantial evidence.  Ms. G.'s argument that other limitations should have been included is conclusory and unsupported by citation to the record.  Ms. G. has failed to show the ALJ erred in his assessment of her RFC, and the ALJ's hypothetical to the vocational expert properly reflected his RFC determination.  (*See* Tr. 24, 60.)

<u>RECOMMENDATION</u>

For these reasons, the undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision.

The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object to it.  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 21st day of June, 2021.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge